FILED
NOV 1 5 2018
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 4:18CR954 RLW/NAB |
| v. ) | |
| ) | |
| MICHAEL HALLEY, ) | Counts I, II, and III |
| DAVID MOOY, ) | Counts I, II, and III |
| ) | |
| Defendants. | |

## INDICTMENT

### COUNT I

The Grand Jury charges that:

A. Beginning sometime in 2012, and continuing to on or about March 2016, with the exact dates unknown, in the Eastern District of Missouri and elsewhere,

MICHAEL HALLEY,
DAVID MOOY,

the defendants herein, did knowingly and unlawfully combine, conspire, agree, and confederate together with each other and other persons, both known and unknown to the Grand Jury, to knowingly distribute and possess with the intent to distribute Schedule I controlled substances and Schedule I controlled substance analogues intended for human consumption, in violation of Title 21, United States Code, Sections 841(a)(1) and 813.

B. MANNER AND MEANS OF THE CONSPIRACY

1. It was part of the drug-trafficking conspiracy that co-conspirator Greg Sloan operated NEB Distributing, LLC and Silver Rocket Distributing LLC for the purpose of

distributing synthetic drugs.

2. It was further part of the drug-trafficking conspiracy that until approximately July, 2012, NEB Distributing LLC and Silver Rocket Distributing LLC had an exclusive agreement to purchase packaged synthetic drugs from subjects d/b/a OPM Midwest Inc., T.S. Botanicals, Inc. and Driftwood of Arizona.

3. It was further part of the drug-trafficking conspiracy that the synthetic drugs sold carried names including "Mad Hatter", "Primo," "Optima", "Cloud 9", "Cloud 9 Deew", "Crazy Eyes" and were packaged in foil packets or containers, in one or three gram quantities.

4. It was further part of the drug-trafficking conspiracy that defendant David MOOY and another individual sold synthetic drugs through a company called "Osokoi, LLC", a member of Silver Rocket Distributing LLC.

5. It was further part of the drug-trafficking conspiracy that defendant Michael HALLEY and others sold synthetic drugs through a company called "Pink Dragon, LLC", a member of Silver Rocket Distributing LLC.

6. It was further part of the drug-trafficking conspiracy that at a time following the execution of search warrants at the offices and storage facilities of OPM Midwest, Inc. T.S. Botanicals, Inc., NEB Distributing LLC and Silver Rocket Distributing, LLC in July, 2012, the drug trafficking conspiracy continued with Robert Jaynes, Jr. and others d/b/a West Strong Wholesale, Inc. replacing OPM Midwest, Inc. and T.S. Botanicals, Inc. as the source of supply. Robert Jaynes d/b/a West Strong Wholesale, Inc. operated their manufacturing and packaging facility in the State of Indiana.

7. It was further part of the drug trafficking conspiracy that at a time after January 2013, defendant Michael HALLEY took over what remained of co-conspirator Greg Sloan's drug

trafficking organization and continued distributing the synthetic drugs manufactured by co-conspirator Robert Jaynes, Jr. and others d/b/a West Strong Wholesale, Inc. to wholesalers and retail establishments in Missouri and Illinois.

8. It was further part of the drug trafficking conspiracy that defendant David MOOY was supplied synthetic drugs by defendant Michael HALLEY and re-distributed the synthetic drugs to his customer base.

9. It was further part of the drug trafficking conspiracy that at a time after June 2014 through March 2016, defendant Michael HALLEY, defendant David MOOY and others began importing the synthetic cannabinoids and foil packages used in the manufacturing and distribution of synthetic drugs commonly referred to as "K2," "Spice," "Incense," "Potpourri" and "herbal sachets."

10. It was further part of the drug trafficking conspiracy that defendants Michael HALLEY, David MOOY and others began manufacturing, packaging and distributing their own version of the synthetic drugs synthetic drugs commonly referred to as "K2," "Spice," "Incense," "Potpourri" and "herbal sachets." Defendants Michael HALLEY and David MOOY distributed and marketed the synthetic drugs they manufactured under the names "Plutonium" and "Sincessary."

11. It was further part of the drug trafficking conspiracy that defendants Michael HALLEY, David MOOY and others marketed and sold the synthetic drugs to wholesalers and retail establishments in the St. Louis area as well as many locations in Missouri and Illinois.

12. It was further part of the conspiracy that defendants Michael HALLEY and David MOOY rented one or more storage facilities to store the synthetic drugs until they were ready to be sold.

13. It was further part of the drug-trafficking conspiracy that the packaged synthetic drugs would be intended for human consumption although they carried a 'not for human consumption' label in an attempt to avoid drug trafficking laws.

14. The synthetic products would be consumed, primarily by smoking or snorting the substance.

15. It was further part of the drug-trafficking conspiracy that the defendants would make sure the chemicals utilized to manufacture the synthetic drugs were changed in an attempt to avoid federal drug scheduling regulations while still producing products which had the same physiological effect creating a "high."

All in violation of Title 21, United States Code, Section 846.

## COUNT II

The Grand Jury further charges that:

A. Beginning sometime in 2012, and continuing to on or about March 2016, with the exact dates unknown, in the Eastern District of Missouri and elsewhere,

MICHAEL HALLEY,
DAVID MOOY,

the defendants herein, did knowingly and unlawfully combine, conspire, agree, and confederate together with each other and other persons, both known and unknown to the Grand Jury, with the intent to defraud and mislead, to:

   a) cause the introduction of misbranded drugs into interstate commerce, in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2);

b) receive and cause the receipt of misbranded drugs in interstate commerce and to deliver and proffer delivery thereof for pay or otherwise, in violation of Title 21, United States Code, Sections 331(c) and 332(a)(2); and

c) do and cause to be done acts with respect to the synthetic drugs, while such drugs were held for sale after being shipped in interstate commerce, that resulted in such synthetic drugs being misbranded, in violation of Title 21, United States Code, Sections 331(k) and 333(a)(2).

B. <u>MANNER AND MEANS OF THE CONSPIRACY</u>

1. The allegations set forth in paragraphs 1 through 15 of the Manner and Means section of Count I are re-alleged and fully incorporated herein.

2. It was part of the misbranding conspiracy that the defendants and other co-conspirators would package and sell synthetic drugs either through NEB Distributing LLC, Silver Rocket Distributing, LLC, Central Store Supplies, West Strong Wholesale, Tight 30 Entertainment, Osokoi, LLC, Pink Dragon, LLC or similar companies controlled by one or more of the conspirators, throughout the United States.

3. It was part of the misbranding conspiracy that defendants and their retailers falsely and misleadingly referred to their synthetic drug products as "incense," "herbal incense," "potpourri," "herbal sachets," and other erroneous names, when in fact such products were synthetic drugs intended for human consumption in order to obtain a physiological effect of a "high."

4.         Each of the drugs was misbranded in at least one of the following respects:

    a)     the synthetic drugs' packaging did not bear adequate directions for use;

    b)     the synthetic drugs were falsely labeled in a manner indicating they were not for human consumption when, in fact, the synthetic drugs were intended for human consumption;

    c)     the synthetic drugs' packaging failed to accurately identify the contents and intended use;

    d)     the synthetic drugs' packaging did not bear a label containing the name and place of the business of the manufacturer, packer, or distributor; and

    e)     the synthetic drugs' labeling did not include adequate warnings against unsafe dosages, methods, or durations of administration or application, in such manner and form as were necessary for the protection of users of the drugs.

5.     Defendants intended to defraud and mislead government authorities regarding the products' status as synthetic drugs, with the purpose of avoiding regulation over the drugs and enabling themselves to continue selling the drugs in exchange for money.

    C.     <u>OVERT ACTS</u>

1.     Defendants and other co-conspirators committed overt acts in furtherance of the conspiracy, including, but not limited to the following:

    a)     advertised the misbranded synthetic drugs over the internet;

    b)     utilized the telephone to market and fill orders for misbranded drugs; and

    c)     sold, shipped and/or transported misbranded synthetic drugs throughout the United States utilizing both commercial carriers and the United States Postal Service.

All in violation of Title 21, United States Code, Sections 331(a), 333(a)(2), and

352, and Title 18, United States Code, Section 371.

## COUNT III

The Grand Jury further charges that:

Beginning sometime in 2012, and continuing through on or about March 2016, with the exact dates unknown to this Grand Jury, in the Eastern District of Missouri and elsewhere,

MICHAEL HALLEY,
DAVID MOOY,

the defendants herein, did conspire with others known and unknown to this Grand Jury, to knowingly engage and attempt to engage in the following monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the transfer or movement of funds, such property having been derived from a specified unlawful activity, that is, conspiracy to distribute and possess with the intent to distribute controlled substances and controlled substance analogues for human consumption, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 813, as described in Count I;

A. MANNER AND MEANS OF THE CONSPIRACY

1. It was part of the money laundering conspiracy that co-conspirator Greg Sloan formed NEB Distributing, LLC and Silver Rocket Distributing, LLC to purchase and distribute synthetic drugs. It was further part of the money laundering conspiracy that co-conspirator Greg SLOAN used these corporate entities to operate a synthetic drug enterprise that sold synthetic drugs across the United States of America on behalf of the members of NEB, Silver Rocket Distributing, LLC and himself.

2. It was further part of the money laundering conspiracy that defendants Michael HALLEY, David MOOY, and others operated as members of a synthetic drug distribution network

under the umbrella of NEB Distribution, LLC and Silver Rocket Distributing, LLC, herein referred to as "NEB".

3. It was further part of the money laundering conspiracy that these members of NEB and Silver Rocket Distributing, LLC marketed, distributed and trafficked in synthetic drugs in interstate commerce through telemarketing sales and traditional wholesale distribution methods.

4. It was further part of the money laundering conspiracy that defendants Michael HALLEY, David MOOY, and other members of NEB opened bank accounts in business names, nominee names and their own individual names to launder the drug proceeds they received from the sale of synthetic drugs.

5. It was further part of the money laundering conspiracy that defendant Michael HALLEY, formed and operated Pink Dragon, LLC. It was further part of the money laundering conspiracy that defendant Michael HALLEY sold synthetic drugs on behalf of the members of NEB and themselves in the approximate amount of $339,882.00.

6. It was further part of the money laundering conspiracy that defendant Michael HALLEY, received and deposited Silver Rocket Distributing, LLC check# 2167 payable to Pink Dragon, LLC in the amount of $11,613.00 from the sale of synthetic drugs.

7. It was further part of the money laundering conspiracy that defendant David MOOY and another individual formed and operated Osokoi, LLC. It was further part of the money laundering conspiracy that defendant David MOOY sold synthetic drugs on behalf of the members of NEB and themselves in the approximate amount of $153,731.00.

8. It was further part of the money laundering conspiracy that at a time after January 2013, defendant Michael HALLEY took over what remained of co-conspirator Greg Sloan's

drug trafficking organization and continued distributing the synthetic drugs manufactured by co-conspirator Robert Jaynes, Jr. and others d/b/a West Strong Wholesale, Inc. to wholesalers and retail establishments in Missouri and Illinois.

9. It was part of the money laundering conspiracy that from January 2013 through on or about October 2013, defendant Michael HALLEY collected drug proceeds from the remaining members of co-conspirator Greg Sloan's drug trafficking organization, including defendant David MOOY. The drug proceeds were utilized by defendant Michael HALLEY to purchase approximately $25,000.00 worth of synthetic drugs from co-conspirator Robert Jaynes, Jr. and others d/b/a West Strong Wholesale, Inc. on a weekly basis. The payments were typically in cash in order to conceal the transactions from law enforcement detection. The synthetic drugs defendant Michael HALLEY purchased from co-conspirator Robert Jaynes, Jr. and others d/b/a West Strong Wholesale, Inc. included but was not limited to Darkness, Black Diamond, XXX Platinum.

10. It was part of the money laundering conspiracy that from August 2013 through on or about October 2013, defendant David MOOY received the following amounts from the sale of synthetic drugs:

| DATE | SOURCE | CHECK # | AMOUNT |
| --- | --- | --- | --- |
| 08/07/2013 | PUFF N SNUFF | 2443 | $13,200.00 |
| 08/14/2013 | PUFF N SNUFF | 2444 | $19,500.00 |
| 08/20/2013 | PUFF N SNUFF | 2445 | $26,400.00 |
| 08/27/2013 | PUFF N SNUFF | 2468 | $34,500.00 |
| 09/03/2013 | PUFF N SNUFF | 2482 | $45,300.00 |
| 09/12/2013 | PUFF N SNUFF | 2512 | $17,500.00 |
| 09/12/2013 | PUFF N SNUFF | 75051 | $20,000.00 |
| 09/17/2013 | PUFF N SNUFF | 93235 | $20,000.00 |
| 09/18/2013 | PUFF N SNUFF | 2502 | $12,400.00 |
| 09/25/2013 | PUFF N SNUFF | 2503 | $16,500.00 |
| Total | | | $225,300.00 |

11. Defendant David MOOY negotiated $185,300.00 of the checks he received for

the sale of synthetic drugs, to cash to conceal the source of the payments. Afterward defendant David MOOY used the cash proceeds he received to pay defendant Michael HALLEY for the synthetic drugs.

All in violation of Title 18, United States Code, Section 1956(h) and Section 1957.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1. Pursuant to Title 21, United States Code, Section 853(a), upon conviction of an offense in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 813, as set forth in Count I of this Indictment, defendants Michael HALLEY and David MOOY shall forfeit to the United States of America:

a. any property, constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as a result of such violation

b. any property used, or intended to be used, in any manner or part to commit or to facilitate the commission of such offenses; and

c. a sum of money equal to the total property constituting, or derived from, any proceeds obtained directly or indirectly as a result of such violations.

2. Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1956(h) as set forth in Count III of the Indictment, the defendants Michael HALLEY and David MOOY shall forfeit to the United States of America:

a. any property, real or personal, involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1957; and

b. any property traceable to such property.

3.  If any of the property described above, as a result of any act or omission of the defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

                            A TRUE BILL.

                            _____

                            FOREPERSON

JEFFREY B. JENSEN
United States Attorney

_____
JAMES C. DELWORTH, #2961
Assistant United States Attorneys